IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CR-99-30-T |
| | )            (CIV-04-511-T) |
| GARY ALLEN LOTT, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Before the Court are: Defendant Gary Allen Lott's Preliminary Motion Under 28 U.S.C. § 2255 [Doc. 202], together with his Preliminary Memorandum [Doc. 215]; the government's response [Doc. 234]; Defendant's reply [Doc. 239]; Defendant's supplemental brief [Doc. 247]; the government's supplemental response [Doc. 248]; and Defendant's supplemental reply [Doc. 249].[1] For reasons that follow, the Court denies relief.

Defendant was indicted with several others on February 17, 1999, and charged with multiple drug offenses and a firearms offense.[2] A jury trial concluded on July 30, 1999, with guilty verdicts against Defendant as follows: Count 1, conspiracy to manufacture and distribute methamphetamine; Counts 6-8, maintaining a residence to manufacture methamphetamine; Count 10, possession of a listed chemical with intent to manufacture methamphetamine; Count 11, attempt to manufacture methamphetamine; and Count 12, unlawful use of a firearm in relation to a drug trafficking crime. Defendant was sentenced April 5, 2000, to life imprisonment on Counts 1 and 11, concurrent terms

---

[1] *The Court has previously granted Defendant's Motion to Amend and Supplement [Doc. 230], but portions to which Defendant refers in subsequent briefs are also considered here.*

[2] *Defendant was indicted with two brothers and a nephew; others were indicted separately. See United States v. Day, No. CR-99-149-T (W.D. Okla.); United States v. Williamson, No. CR-99-148-T (W.D. Okla.).*

of imprisonment of 240 months on each of Counts 6-8 and 10, and a consecutive term of imprisonment of 60 months on Count 12. Defendant appealed and, through counsel, raised numerous claims of error. The court of appeals affirmed Defendant's convictions and sentences on November 5, 2002, and certiorari was denied on April 21, 2003. *United States v. Lott*, 310 F.3d 1231, 1235 (10th Cir. 2002), *cert. denied*, 538 U.S. 991 (2003).

In his Preliminary Motion [Doc. 202], Defendant recites a litany of issues but presents no support for any issue.[3] In his later-filed Preliminary Memorandum [Doc. 215], Defendant develops seven grounds for relief to some extent; all involve allegations of ineffective assistance of counsel. Specifically, Defendant claims trial counsel erred in failing: (1) to challenge the warrantless search of room #25 at the Chieftain Motel; (2) to challenge the warrantless search of his car; (3) to file motions to suppress evidence obtained in these two searches; (4) to investigate adequately the alleged crimes; (5) to hire an investigator; (6) to interview Defendant regarding the circumstances surrounding his arrest and the warrantless searches; and (7) to cross-examine adequately the law enforcement officers who testified at trial.[4] In his initial reply brief [Doc. 239], Defendant arguably develops five additional arguments: (8) trial counsel erred in failing to interview and subpoena Defendant's girlfriend, Nicole Hatcher; (9) error occurred when the methamphetamine was treated for sentencing purposes as "actual" or pure methamphetamine instead of a mixture or substance containing a detectable amount of methamphetamine; (10) methamphetamine attributable to Defendant was double-counted; (11) violations occurred of principles later announced in *Crawford*

---

[3] Although presented as eleven grounds for relief, each enumerated item contains numerous subparts. Thus the Preliminary Motion appears to list as many as forty grounds for relief.

[4] This enumeration of Defendant's asserted grounds for relief does not correspond to the numbers used by Defendant in his Preliminary Motion. The Court has renumbered them for ease of discussion and due to the numerosity of Defendant's stated issues, which for the most part are discussed in a single, labyrinthine argument.

*v. Washington*, 541 U.S. 36 (2004); and (12) the jury was erroneously instructed on an aiding and abetting theory of liability.

    **A.**    <u>**Timeliness**</u>

The Court finds Defendant's § 2255 motion is timely filed. Although a one-year time limit applies, the date on which Defendant placed his Preliminary Motion in the prison mail system, as shown by the certificate of mailing [Doc. 202, at 11] and the date of mailing with the United States Postal Service [Doc. 207, Ex. 2.], are both within one year of the date Defendant's direct appeal ended with the denial of certiorari review. *See United States v. Gray*, 182 F.3d 762, 766 (10th Cir. 1999). Moreover, the government has conceded the timeliness of Defendant's filing in its initial response to the Preliminary Motion. [Doc. 207.][5]

    **B.**    <u>**Failure to Develop Argument**</u>

The vast majority of issues listed in Defendant's Preliminary Motion remains undeveloped and unsupported by arguments or references to the record. Despite a request in the Preliminary Motion for additional time to present supporting argument, Defendant has never provided in subsequent filings any legal argument or factual support for most of his potential claims. As to all issues Defendant has failed to develop, the Court need not review them. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (a court is "not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments"). Therefore, any request for relief based solely on the issues in the Preliminary Motion is denied.

    **C.**    <u>**Procedural Bar**</u>

---

[5] *A delay in the disposition of Defendant's § 2255 motion is due, in part, to the unavailability of the trial transcript, which was included in the appellate record of co-defendant Johnny Lott and was returned to this Court on December 6, 2006, after the denial of certiorari review. [Doc. 257.]*

Defendant's claims of ineffective assistance of counsel are properly raised by a § 2255 motion rather than on direct appeal. *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). Three of Defendant's claims, however, do not present issues of errors by defense counsel but merely allege the occurrence of errors at sentencing and in jury instructions.[6] Those claims – numbers nine, ten, and twelve above – are procedurally barred by Defendant's failure to raise the claims on direct appeal "unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994).

Defendant addresses the issue of procedural default in his initial reply brief. There he argues that he has shown cause and prejudice and refers the Court to the allegations of ineffective assistance of counsel set forth in his Preliminary Memorandum. This argument, however, misconstrues the showing Defendant must make to avoid the procedural bar. Defendant makes no effort to show that counsel was ineffective, or that he was prejudiced, by failing to raise the defaulted claims. A conclusory allegation of ineffective assistance is insufficient to prove cause for failing to raise an issue on direct appeal. *See United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996).

Similarly, Defendant's conclusory statement that it would be a fundamental miscarriage of justice for his claims not to be heard is insufficient to present a substantial issue as to the second exception. This alternative method of avoiding the procedural bar requires a defendant to show a fundamental miscarriage of justice "has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence must be

---

[6] Arguably, the eleventh claim – alleging violations of Crawford – is not directed at counsel either; Defendant primarily argues that trial counsel's failure to interview and subpoena Ms. Hatcher permitted a Crawford violation to occur. Out of caution, however, the Court considers it below under the aegis of ineffective assistance.

supported by new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Defendant does not present such a claim.

Therefore, the Court finds Plaintiff's ninth, tenth and twelfth grounds for relief – alleging errors at sentencing and in jury instructions – are procedurally barred.[7]

### D.  *Blakely/Booker* Claims

In his initial reply brief and in supplemental briefs, Defendant argues claims arising under *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005). These claims are foreclosed by binding precedent. In *United States v. Price*, 400 F.3d 844, 849 (10th Cir. 2005), the court of appeals concluded: "*Blakely* does not apply retroactively to convictions that were already final at the time the Court decided *Blakely*, June 24, 2004." In *United States v. Bellamy*, 411 F.3d 1182, 1186 (10th Cir. 2005), the court of appeals reached the same decision with respect to *Booker*. Because Defendant's convictions became final on April 21, 2003, the Court denies relief on all claims asserted under *Blakely* and *Booker*.[8]

### E.  **Merits of Remaining Claims**

The Court will separately address each of Defendant's remaining claims because, when construed liberally, each raises an issue of ineffective assistance of counsel.

> Ineffective assistance of counsel claims are . . . guided by the now familiar *Strickland* test. Under this test, a petitioner must show that "his trial counsel committed serious errors in light of 'prevailing professional norms' and that there is

---

[7] *To the extent Defendant intended to advance these claims under the ineffective assistance rubric, they are unavailing. As to his sentence, Defendant offers no facts to show any new issue concerning drug quantity and purity might have affected his sentence. His counsel raised similar objections without success at sentencing because the marijuana equivalent attributed to Defendant "was five to six times higher than that required for a base offense level of 38." Lott, 310 F.3d at 1244; see Sentencing Tr. at 828-33. Similarly as to jury instructions, Defendant is simply mistaken. No aiding and abetting instruction was given. See Instructions to the Jury [Doc. 86].*

[8] *The Court also notes Defendant unsuccessfully raised issues on direct appeal based on the Supreme Court's predecessor decision of Apprendi v. New Jersey, 530 U.S. 466 (2000).*

a 'reasonable probability' that the outcome would have been different had those errors not occurred." *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir.1993) (*quoting Strickland*, 466 U.S. at 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

*United States v. Mora*, 293 F.3d 1213, 1217 (10th Cir. 2002) (citations omitted); *see Strickland v. Washington*, 466 U.S. 668, 688, 691-92 (1984). If Defendant's proof fails on either prong of this two-part test, the Court need not determine whether Defendant can satisfy the other prong. *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000); *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000); *see Strickland*, 466 U.S. at 697. Moreover, "[t]here is a strong presumption that counsel provided effective assistance . . . .'" *Kennedy*, 225 F.3d at 1197.

       1.    <u>Failure to challenge the warrantless search of the motel room</u>

Defendant first contends trial counsel was ineffective for failing to challenge the warrantless search of room #25 at the Chieftain Motel on the evening of January 21, 1999. In this room, where Defendant was staying at the time of his arrest in the motel parking lot, evidence was found related to the manufacture of methamphetamine and drug trafficking, including receipts that connected Defendant to other sites of criminal activity. Defendant presents new evidence in support of his motion consisting of photographs of the Chieftan Motel taken at a later time. One of these photographs, which is apparently taken at night and consists primarily of blackness, allegedly draws into question the trial testimony of Sergeant Danny Fitzwilliam concerning the circumstances leading up to and surrounding Defendant's arrest and the searches. Sergeant Fitzwilliam testified at trial that, immediately prior to the arrest, he saw Ms. Hatcher standing in the doorway of the motel room and witnessed Defendant walk from the doorway to the driver's side of a red Camaro, get in the driver's door, and lean over the driver's seat inside the car (where a handgun was subsequently found). Defendant now argues in his Preliminary Memorandum that this testimony was clearly

"fantastic," "contrived," and "incredible" given the distances and lighting conditions involved. *See* Preliminary Mem. [Doc. 215] at 17-18, 30-33. From this, Defendant argues Sergeant Fitzwilliam's lack of credibility undermines all of his other testimony concerning the January 21 searches.

Defendant's argument misstates some aspects of Sergeant Fitzwilliam's testimony. He did not testify, for example, that he observed Ms. Hatcher and Defendant's movements from some vantage point across Shields Boulevard, a six-lane divided street. At the time of his observations, Sergeant Fitzwilliam had already talked to Mark Williamson, a co-conspirator who was stopped and arrested after he was seen leaving the motel in a distinctive vehicle associated with the conspiracy. *See* Trial Tr. at 12, 15-16. From Mr. Williamson, Sergeant Fitzwilliam learned Defendant and Ms. Hatcher were staying in room #25, and Sergeant Fitzwilliam returned to the motel and prepared other officers for executing an arrest warrant for Defendant. Trial Tr. at 16-18. The observations occurred as the officers pulled into the parking lot. Trial Tr. at 18. In addition to lights in the parking lot, which are visible in Defendant's photographs, the door of room #25 was open, which would shed some light on the scene. As Ms. Hatcher stood in the doorway, Defendant walked toward the Camaro, which was "backed in right in front of the room." Trial Tr. at 18. Defendant opened the driver-side door, which would have caused the vehicle's interior light to switch on, and "leaned over the driver's seat inside the vehicle, and as [the officers] pulled in and approached him, he appeared to look up at [them] and, when he saw the van, got out of the car and closed the door and began walking away from the room and the Camaro." Trial Tr. at 18. Photographs of the Chieftan Motel and room #25 as they appeared on the evening of January 21, 1999, were admitted at trial and exhibited during Sergeant Fitzwilliam's testimony. Trial Tr. at 13-14, 24. Thus the jury

could judge for itself the likelihood that Sergeant Fitzwilliam was able to make the observations to which he testified.

More importantly, however, the trial record reveals the officers did not need a warrant to search room #25 because Ms. Hatcher consented to a search when asked by Sergeant Fitzwilliam. Trial Tr. at 28. The fact of her consent does not depend solely on his testimony. The officers who executed the arrest warrant obtained a written waiver from Ms. Hatcher and provided it to the officer who conducted the search, Lieutenant Terhune. Trial Tr. at 69. Defendant has submitted with his reply brief a copy of the officers' interview of Ms. Hatcher that night, which further confirms her consent and written waiver. Petitioner's Traverse [Doc. 239], Ex. G-2. In view of this fact, which stands unrefuted, the Court finds no error in the decision by Defendant's attorney not to challenge the warrantless search of room #25 nor any likelihood that such a challenge would have succeeded. Therefore, Defendant's first claim of ineffective assistance lacks merit.

2.      Failure to challenge the warrantless search of Defendant's car

Defendant similarly contends trial counsel was ineffective when he failed to challenge the warrantless search of the Camaro parked outside room #25 at the Chieftain Motel. From the car, Sergeant Fitzwilliam seized a semiautomatic handgun that provided a basis to convict Defendant of Count 12, unlawful use of a firearm in relation to a drug trafficking crime, as well evidence to support the other charges. Defendant argues the search was neither incident to his arrest, which occurred some distance from the Camaro, nor justified by exigent circumstances.

Like his claim concerning the search of the motel room, Defendant's argument concerning the vehicle search depends on the "contrived nature of Fitzwilliams' [sic] testimony" and Defendant's version of events, under which the handgun was not lying in plain view in an unlocked

car. Preliminary Mem. [Doc. 215] at 32-34. Defendant primarily questions the veracity of Sergeant Fitzwilliam's testimony that he and Ms. Hatcher moved away from room #25 to talk and, in so doing, "stood by the red Camaro that Mr. Lott had been leaning into when [officers] arrived" and "saw [the handgun] sitting on the driver's seat." Trial Tr. at 22. Again, however, this testimony is not inherently unbelievable when read in context of the trial record. Sergeant Fitzwilliam testified that when he approached Ms. Hatcher and identified himself, he smelled "a real strong chemical odor coming from the room that [he] associated with methamphetamine labs." Trial Tr. at 23. He further described it as "a real strong solvent odor . . . like ether or like a real strong paint thinner" that is "real overbearing" and "gives you a headache when you smell it, and it also smells so strong you almost feel like you should be able to see fumes. That's how strong the smell is that was coming from the room." Trial Tr. at 23. This description of conditions near the doorway to room #25 easily explains why he would move away from it to talk. Further, Defendant provides no evidence to refute Sergeant Fitzwilliam's testimony that the gun was plainly visible through the car window.

Because Defendant provides no facts on which to base a challenge to the search of the Camaro, the Court finds the second claim of ineffective assistance to be unsupported. Therefore, this claim also lacks merit.

          3.     <u>Failure to file motions to suppress the fruits of the searches</u>

For reasons discussed above, Defendant has failed to show trial counsel erred in failing to challenge the warrantless of searches of his motel room and car. Thus any claim that counsel erred in failing to move to suppress the fruits of those searches necessarily fails as well.

          4-6.    <u>Failure to properly investigate the alleged crimes, to hire an investigator, and to interview Defendant</u>

In his fourth, fifth and sixth claims, Defendant argues that his trial counsel was ineffective for failing to "conduct a proper pretrial investigation, hire an investigator, or consult with Petitioner." Preliminary Mem. [Doc. 215] at 17. The gist of all these claims is that defense counsel should have tried harder to undermine Sergeant Fitzwilliam's testimony and "to put the government to its burden of proof." Preliminary Mem. [Doc. 215] at 19.

With the exception of the photographs submitted by Defendant, he has not identified any particular facts or alleged exculpatory evidence that further investigation would have yielded. "To satisfy the prejudice prong of the *Strickland* test for ineffective assistance of counsel, a defendant must specifically show what beneficial evidence an 'adequate' investigation would have produced. Simply speculating that investigation might have resulted in something useful will not suffice." *United States v. Manriquez-Rodriguez*, No. 98-2203, 1999 WL 345505, *5 (10th Cir. June 1, 1999) (internal citations omitted); [9] *see also Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir.1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n. 1 (10th Cir.2001) ("even if counsel's pretrial investigation were constitutionally deficient, petitioner has not demonstrated any resulting prejudice" where he fails to "state what exculpatory evidence an adequate investigation would have discovered or how this evidence would have affected the outcome of the innocence/guilt phase of the trial"); *Moore v. Reynolds* 153 F.3d 1086, *1098 (C.A.10 (Okla.),1998) (petitioner effectively conceded he could not show any prejudice arising from counsel's alleged inadequate investigation where he could not state what particular facts would have been discovered).

---

[9] *Unpublished decision cited pursuant to 10th Cir. R. 32.1(a).*

Thus because Defendant has not identified any useful facts or evidence that a more thorough investigation might have uncovered (aside from photographs of the Chieftan Motel), Defendant has failed to allege a basis for relief on his claims of insufficient pretrial investigation.

### 7. Failure to cross-examine law enforcement witnesses

Defendant also claims his counsel failed to perform adequately at trial in cross-examining law enforcement witnesses. Defendant specifically complains his attorney's questions of Sergeant Fitzwilliam "were of a trivial nature." Preliminary Mem. [Doc. 215] at 24. Notwithstanding Defendant's dissatisfaction, the Court finds nothing about counsel's cross-examination of witnesses that suggests it "was so unreasonable as to constitute ineffective assistance of counsel." *Cannon v. Mullin*, 383 F.3d 1152, 1164 (10th Cir. 2004). Therefore, the Court finds no merit in this claim.

### 8. Failure to subpoena Ms. Hatcher

Finally, Defendant claims his attorney should have subpoenaed Ms. Hatcher to testify in his defense. Defendant does not identify, however, what favorable evidence (if any) Ms. Hatcher might have provided. "Generally, the decision whether to call a witness rests within the sound discretion of trial counsel." *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998). Defendant has not provided any basis to overcome the presumption of counsel's effectiveness in this regard. Undoubtedly, as a person with first-hand knowledge of Defendant's drug activities, Ms. Hatcher's testimony carried a potential for great harm. Defendant has not suggested a potential benefit from her testimony that would clearly outweigh this risk. Therefore, the Court finds this claim of ineffective assistance lacks merit.

### 9. Failure to raise an issue under *Crawford*

In *Crawford*, the Supreme Court held that the Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68 (abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980)). Like *Blakely* and *Booker*, the Supreme Court's decision in *Crawford* is not retroactively applicable in an initial habeas petition. *Brown v. Uphoff*, 381 F.3d 1219, 1227 (10th Cir.2004). Even if raised here under the guise of an ineffective assistance claim, Defendant cannot show his counsel committed a serious error under prevailing professional norms because *Crawford* announced a new rule of constitutional law. *See Brown*, 381 F.3d at 1226. "The Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant" or to predict future developments in the law. *United States v. Harms*, 371 F.3d 1208, 1212 (10th Cir. 2004). Thus this claim lacks merit.

F. **Conclusion**

Defendant's has made no showing of ineffective assistance of counsel with respect to these issues. Therefore, he is not entitled to post-conviction relief.

For the above reasons, Defendant's Motion Under 28 U.S.C. § 2255 [Doc. 202] is DENIED.

_____
RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE